IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NCONTRACTS LLC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:22-cv-00868 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| RYAN HOLMBERG, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's motion for a temporary restraining order ("TRO"). (Doc. No. 6). Defendant filed a response to the motion for a TRO (Doc. No. 18) as well as a motion to dismiss for lack of personal jurisdiction and improper venue (Doc. No. 17). On November 8, 2022, the Court issued an order explaining that it would resolve Defendant's motion to dismiss before addressing the motion for a TRO because Defendant had raised colorable issues of personal jurisdiction and venue. For the reasons stated herein, Defendant's motion to dismiss is GRANTED, and this action is transferred to the Eastern District of California.

### FACTS[1]

Ncontracts is a compliance and risk management and solutions company headquartered in Brentwood, Tennessee. (Doc. No. 1 at 5–6). Although many of Ncontracts' vital corporate

---

[1] Unless indicated otherwise (as for example when particular facts are identified as being merely asserted by a party or otherwise qualified in some manner), the facts set forth in this section are undisputed. Thus, the facts set forth herein are either undisputed or specifically identified as disputed. In stating the facts herein, the Court often uses the language used by the party that asserted the facts in the first instance; this helps the Court ensure that the facts as stated herein are undisputed, even if the language used is less precise or thorough than the Court would have used were it writing on a blank slate.

functions, such as payroll, human resources, and technical support, are handled in its office in Brentwood, Tennessee,[2] Ncontracts also permits many of its employees to work completely remotely. (Doc. No. 1 at 13). In January 2021, Ncontracts acquired QuestSoft Corporation. (Doc. 1 at 11). Defendant was a QuestSoft employee at the time of acquisition and stayed on with Ncontracts once the transaction was complete, taking the role of Nonctracts' Vice-President of Lending Compliance Sales. (Doc. No. 1 at 14). Defendant is a resident of California and spent the vast majority of his time working for Ncontracts remotely from California, traveling to Tennessee on only two occasions—from March 1 to March 5, 2021 and from August 7 to August 11, 2021, each time to receive job training from Ncontracts. (Doc. 1 at 14, 15). Although Defendant did not return to Tennessee for in-person training thereafter, in the months following his training, he continued to participate in remote trainings, often with individuals who were in Tennessee. (Doc. No. 26 at 1, Second Decl. Michael Berman ¶ 2). These trainings involved the sharing of Ncontracts' internal confidential information. (Doc. No. 26 at 1, Second Decl. Michael Berman ¶ 2). Holmberg also would have communicated with executives of Ncontracts who are also located in Tennessee.[3] (Doc. No. 26 at 1, Second Decl. Michael Berman ¶ 3).

As part of his employment with Ncontracts, Defendant signed an Intellectual Property Agreement (Doc. No. 6-1) ("the Agreement"), which now lies at the heart of this litigation.

---

[2] This location is within the Middle District of Tennessee.

[3] As noted above, in describing the facts, the Court often uses the language of the parties, even when it is ambiguous. In Michael Berman's Second Declaration, he states that "Holmberg *would have* communicated with executives of the organization…" (Doc. No. 26 at 1) (emphasis added). The use of the subjunctive tense here makes it unclear whether Berman is (a) averring that Holmberg in fact communicated with executives located in Tennessee; or (b) merely *speculating* that Holmberg in fact communicated with executives located in Tennessee. (Notably, this kind of speculation permissibly may be included in an affidavit, even if it is ultimately unpersuasive as speculation often is, to the extent it is based on personal knowledge of the declarant's that tends to support the likelihood of the speculated fact). On a motion to dismiss on which evidence is received, the Court views the evidence in the light most favorable to the plaintiff, but the Court nevertheless proceeds cautiously before construing a testimonial statement as

Defendant executed the Agreement in California and returned it to the Ncontracts office in Tennessee. (Doc. No. 19 at 2, Holmberg Decl. ¶ 4). The Agreement contains, in addition to anti-competition clauses and several restrictions on the use and disclosure of intellectual property, a choice-of-law provision stating that the Agreement is governed by the laws of Tennessee (without regard to its conflict-of law provisions). (Doc. No. 6-1).

In June 2022, Ncontracts terminated Defendant, and in September of that year, Defendant began working for Compliance Tech. (Doc. No. 7 at 6–7).[4] Plaintiff alleges that Defendant's employment with Compliance Tech, a supposed direct competitor of Ncontracts, as well as other actions of Defendant, violate the Agreement. (Doc. No. 7). On October 27, 2022, Plaintiff filed a request for a temporary restraining order ("TRO") and a preliminary injunction (Doc. No. 6). Defendant replied to the request for the TRO (Doc. No. 18) and also filed what was styled as a "Motion to Dismiss and Incorporated Memorandum of Law on the Basis of Lack of Personal Jurisdiction and Improper Venue" (Doc. No. 17, "Defendant's Motion").[5] Via Defendant's Motion, Defendant requested that this Court dismiss this case outright or, alternatively, transfer it to an appropriate district in California. Doc. No. 17 at 17). (Finding that Defendant had raised

---

asserting facts that actually are not unambiguously asserted by the statement considering the actual wording and grammar contained therein. Therefore, based on the precise content of this particular statement in Berman's declaration, the Court: (a) construes Berman as averring here that based on his understanding of Ncontracts and Holmberg's role therein, he *believes that in all likelihood* Holmberg communicated with executives in Tennessee; but (b) does not construe Berman as necessarily averring here that Holmberg *in fact* did so, or that Berman claims to know whether Holmberg in fact did so.

[4] Although the facts surrounding Defendant's termination are hotly disputed by the parties, the Court need not resolve or address this dispute in the resolution of these motions.

[5] As noted, Defendant's Motion included not only the motion (to dismiss or alternatively to transfer) but also what Defendant called an "incorporated memorandum of law" in support of the motion. (Doc. No. 17 at 1). By filing the motion and the supporting memorandum as (and in) a single document——the kind of practice that fosters confusion even without a local rule prohibiting such practice—Defendant ran afoul of this Court's Local Rule 7.01(a)(2). Counsel is admonished to comply with this local rule in the future.

colorable issues regarding jurisdiction and venue, the Court found it proper to first address the Defendant's Motion before resolving Plaintiff's request for extraordinary injunctive relief.

## LEGAL STANDARD

Defendant's Motion was filed pursuant to Fed. R. Civ. P. 12(b)(2) and (3), which provide for dismissal of a claim for "lack of personal jurisdiction" and "improper venue" respectively. A plaintiff bears the burden of establishing that, in the court in which the action was filed, personal jurisdiction exists over the defendant and venue is proper. *Elcan v. FP Assocs. LTD*, Case No. 3:19-cv-01146, 2020 WL 2769993, at *3 (M.D. Tenn. May 28, 2020); *Marion v. Conley*, 2006 WL 4608613, at *1 (E.D. Tenn. Oct. 4, 2006). With respect to venue, the Court "may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of plaintiff." *See Gone To The Beach, LLC v. Choicepoint Services, Inc.*, 434 F. Supp. 2d 534 (W.D. Tenn. 2006) (internal quotations omitted).

On a 12(b)(2) motion to dismiss, district courts have discretion to either decide the motion on affidavits alone, permit discovery on the issue, or conduct an evidentiary hearing.[6] *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Where, as here, the court rules without conducting an evidentiary hearing,[7] the plaintiff's burden of proof is "relatively slight." *Id.* (citing *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017)).

Nevertheless, ""[i]n response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Ramsey v. Greenbush Logistics, Inc.*, 263 F. Supp. 3d 672, 676 (M.D. Tenn. 2017) (quoting *Miller v. AXA*

---

[6] Experience shows that courts sometimes do two of these three things, namely, permit discovery on the issue and then either decide the motion on written submissions alone or conduct an evidentiary hearing.

[7] The parties did not request such a hearing, and the Court does not find that the benefits of such a hearing would outweigh its costs (in terms of expenditure of resources by the parties and the Court).

*Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012)). "In other words, a 'plaintiff may not simply rest on the bare allegations of the complaint. But uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 583 (S.D. Ohio 2016) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)).

Moreover, when a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Elcan*, 2020 WL 2769993, at *3. The Sixth Circuit has held that a court disposing of a Rule 12(b)(2) motion without an evidentiary hearing should not weigh the controverting assertions of the party seeking dismissal, because "we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation and quotation marks omitted), cited in *Elcan*, 2020 WL 2769993, at *3. "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.* "In this procedural posture [without an evidentiary hearing], the court does not weigh the facts disputed by the parties but may consider the defendant's undisputed factual assertions." *Camps v. Gore Cap., LLC*, No. 3:17-cv-1039, 2019 WL 2763902, at *4 (M.D. Tenn. July 2, 2019).

It is not necessarily easy to reconcile all of the above-referenced rules with one another, because, at least superficially, they could be understood to say different things about the extent to which the district court must accept as true the allegations of the complaint. But the Court believes that they can be reconciled. And the upshot seems to be this: in opposing a motion to dismiss for lack of personal jurisdiction, a plaintiff cannot rely on mere allegations in the complaint, unless

they are uncontroverted by the defendant-movant—in which case they can be accepted as true, as can the averments in the plaintiff's declarations (even if contradicted) and the defendant's undisputed factual assertions.

Because, in the Court's discretion there has been no evidentiary hearing with regard to Defendant's motion, the Court will determine whether Plaintiff has demonstrated this Court's personal jurisdiction over Defendant under a *prima facie* standard, rather than the heavier preponderance of the evidence standard. *Camps*, 2019 WL 2763902, at **4-5. "A *prima facie* showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction." *Reyes v. Freedom Smokes, Inc.*, No. 5:19-CV-2695, 2020 WL 1677480, at *2 (N.D. Ohio Apr. 6, 2020) (quoting *Death v. Mabry*, No. C18-5444 RBL, 2018 WL 6571148, at *2 (W.D. Wash. Dec. 13, 2018)).

Plaintiff brings this case under both federal-question and diversity jurisdiction. (Doc. No. 1 at 5–6). "When a plaintiff bases subject-matter jurisdiction on diversity, or on federal question where no federal long-arm statute applies, the court must apply the jurisdictional law of the state in which it resides." *See Capital Bank Intern. Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 75 n.2 (D.D.C. 2003). Because 18 U.S.C. § 1836 does not contain a long-arm provision, the Court must apply the Tennessee long-arm statute. Tennessee's long-arm statute authorizes its courts to exercise jurisdiction over persons on "any basis not inconsistent with the constitution of this state or of the United States." *Bulso*, 2017 WL 563940, at *1(citing Tenn. Code Ann. § 20-2-214(a)(6)). Therefore, the Court must decide whether the exercise of jurisdiction comports with the limits imposed by federal due process, without having to decide separately whether Tennessee law authorizes the exercise of jurisdiction. *Id.*; *see also Camps*, 2019 WL 2763902, at *5 ("In other words, the jurisdictional limits of Tennessee law and federal constitutional due process are

identical, and the two inquiries are merged."). For this reason, it is appropriate for this Court to refer (as it will at times) interchangeably to the *existence* of personal jurisdiction (primarily a matter of state law) and the *constitutionality* of the assertion of personal jurisdiction (a matter of federal law).

## DISCUSSION

Personal jurisdiction comes in two forms: general and specific. *Tailgate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 2366948, at *2 (M.D. Tenn. June 5, 2019). Plaintiff does not assert that the Court has general jurisdiction[8] over Defendant. (Doc. No. 25). Rather, Plaintiff alleges that the Court has specific jurisdiction over Defendant.

Specific jurisdiction must arise out of or relate to the defendant's contacts with the forum—principally an activity or occurrence that takes place in the forum state. *Tailgate Beer*, 2019 WL 2366948, at *2. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum. *EnhanceWorks, Inc. v. Dropbox, Inc.*, No. M2018-01227-COA-R3-CV, 2019 WL 1220903, at *6 (Tenn. Ct. App. Mar. 14, 2019) (citing *Walden v. Fiore*, 571 U.S. 277, 294 (2014)). "Specific jurisdiction requires us to focus on the 'affiliation between the forum and the underlying controversy.'" *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The question is whether "the defendant's actions connect

---

[8] "General jurisdiction" requires that a plaintiff have continuous and systematic contacts with the state. *Tailgate Beer*, 2019 WL 2366948, at *2. "For an individual, an individual's domicile determines whether a court has general jurisdiction…" *See Winston v. Zaehringer*, 2020 WL 3259531 (E.D. Tenn. June 16, 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 914, 924 (2011)). Corporations, on the other hand, must have contacts "so continuous and systematic as to render them essentially at home in the forum state" as to make them susceptible to general jurisdiction. *See id.* (internal quotation marks omitted).

him to the forum," and thus the analytical focus should not be on the plaintiff's contacts with the defendant and forum. *Walden*, 571 U.S. at 289.

The Court has specific jurisdiction over Defendant if Plaintiff shows that: (1) Defendant purposefully availed himself of the privilege of acting in Tennessee or causing a consequence in Tennessee[9]; (2) the causes of action herein arise out of or relate to Defendant's contacts in Tennessee; and (3) Defendant's action in Tennessee or the consequences caused by its actions directed towards Tennessee are substantial enough to make the exercise of personal jurisdiction over it reasonable. *Tailgate Beer*, 2019 WL 2366948, at *2; *Winston v. Zaehringer*, No. 1:19-CV-216, 2020 WL 3259531, at *6 (E.D. Tenn. June 16, 2020). As indicated below, the first two prongs are requirements for the plaintiff to satisfy, in which the case third prong comes into play and gives the defendant an opportunity to defeat personal jurisdiction due to lack of reasonableness.

1. PRINCIPLES REGARDING SPECIFIC PERSONAL JURISDICTION

    a. *Purposeful Availment*

Purposeful availment is the "constitutional touchstone"[10] of personal jurisdiction. *Winston*, 2020 WL 3259531, at *6 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum. *Tailgate Beer*, 2019 WL 2366948, at *4. The purposeful availment prong of the test asks whether

---

[9] The Court notes as to the first prong, Plaintiff asserts that Defendant availed himself of the privilege of *acting* in Tennessee, without asserting also that Defendant purposefully availed himself of the privilege of *causing a consequence* in Tennessee. (Doc. No. 25 at 7). Accordingly, the Court limits its discussion to the first of these two options.

[10] The Court realizes that this metaphor is too vague to be very instructive; all the Court really can derive from it is that it means that "purposeful availment" is very important to personal jurisdiction—a truism already apparent from the above-stated fact that a defendant's "purposeful availment" is required for that defendant to be subject to personal jurisdiction.

the defendant acted or caused a consequence in Tennessee such that it "invoked the benefits and protections" of Tennessee law and, thus, could have reasonably anticipated being brought into court there. *Elcan*, 2020 WL 2769993, at *4. A defendant should not be brought to court in a particular forum solely as a result of random, fortuitous, or attenuated contacts with that forum. *Id.*

A court can have jurisdiction over a defendant even if the defendant has few contacts with the forum, but the defendant must have done something to create a contact with the forum. *Winston*, 2020 WL 3259531, at *7. A plaintiff cannot rely on his or her own contacts with the forum to justify jurisdiction over the defendant. *Id.* Thus, the defendant's relationship with the forum state must arise out of contacts that the defendant himself created; the unilateral activity of the plaintiff or a third-party cannot be the basis of exercising personal jurisdiction over a defendant. *Camps*, 2019 WL 2763902, at *6.

b. *Arise out of or relate to*

"If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Tailgate Beer*, 2019 WL 2366948, at *5. In a recent Supreme Court opinion, the Supreme Court reiterated that specific jurisdiction attaches when a defendant cultivates a market for a product in the forum State and the product subsequently malfunctions there. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021). The Court found that the defendant was subject to specific jurisdiction because it had systematically targeted the forum states (Montana and Minnesota) for marketing the particular models of the vehicles (through advertising, selling, and servicing those models in the states for many years) that injured the plaintiffs, though the particular vehicles involved in the case were not designed, manufactured, or sold in the forum states. *Id.* at 1028. The Court rejected the defendant-appellant's focus on causation and stated that the disjunctive nature

of the "arise out of *or* relate to" test indicates that causation between the defendant's contacts with the forum and the cause(s) of action does not *necessarily* have to be present. *Id.* at 1026. In his concurrence, Justice Alito agreed with the majority declining to adopt the defendant's but-for characterization of the specific jurisdiction test, but he expressed concern that the majority was "recogniz[ing] a new category of cases in which personal jurisdiction is permitted: those in which the claims do not 'arise out of' (*i.e.*, are not caused by) the defendant's contacts but nevertheless sufficiently 'relate to' those contacts in some undefined way." *Id.* at 1033. The scope of this new gloss on this prong of the test for specific jurisdiction is unclear. But in any event, this case does not require the Court to determine whether this is an instance where the claim "relates to," even if it does not arise "out of," Defendant's conduct in the forum state, as Plaintiff has failed to establish that Defendant purposefully availed himself of the privilege of acting in Tennessee.

        c.   <u>Reasonableness</u>

If the court finds that the plaintiff has established the first two prongs of the specific-jurisdiction inquiry, the burden shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Tailgate Beer*, 2019 WL 2366948, at *6. The burden on the defendant to meet this prong is high. *Id.* The Sixth Circuit has stated that "[i]n determining reasonableness, we examine three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." *Bulso*, 730 F. App' x 351.[11]

---

[11] Other courts have found five factors to be relevant in determining the reasonableness of exercising personal jurisdiction: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Tailgate Beer*, 2019 WL 2366948, at *6 (citing *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 888 (W.D. Tenn. 2017)). The undersigned questions why this inquiry—an inquiry into whether the exercise of personal jurisdiction

2. ANALYSIS

Plaintiff contends that Holmberg purposefully availed himself of the privilege of acting in Tennessee by 1) accepting employment with Ncontracts, a Tennessee-based company, 2) signing an Intellectual Property Agreement containing a Tennessee choice-of-law provision and subsequently returning the agreement to Ncontracts' Tennessee office, 3) personally attending two training sessions (totaling ten days) in Tennessee, and 4) receiving additional training and communications (while based remotely in California) with individuals based in Tennessee in the months after his hiring, which included the sharing of Ncontracts' internal confidential information.

While Plaintiff directs the Court to several authorities, *AlixPartners LLC v. Brewington* is the most instructive in this case. 836 F.3d 543 (6th Cir. 2016). In *AlixPartners*, AlixPartners filed for declaratory relief in the Eastern District of Michigan against a former employee, Charles Brewington, to preclude him from pursuing a demand for arbitration on behalf of himself and a purported class. *See id.* at 546. Brewington, a resident of Texas, moved to dismiss the complaint for lack of personal jurisdiction. *See id.* The Sixth Circuit noted that Brewington, despite being based in Texas during his employment, was in contact with AlixPartners employees in Michigan throughout his hiring process and tenure at the company. *See id.* at 547. As the court explained, the record reflected that Brewington communicated with several Michigan employees during his hiring, signed and returned to AlixPartners's Michigan office an employment agreement

---

would exceed the boundaries of due process that exist to protect defendants—should turn at all upon the last two concerns, which strike the undersigned as having only an attenuated relationship with due process for defendants. In any event, following the Sixth Circuit's lead as noted above, the Court will not apply those two factors.

containing a Michigan choice-of-law provision, and traveled to the Michigan office to "attend a mandatory orientation program." *See id.*

Once employed by AlixPartners, Brewington's role as member of the Talent Acquisition Team required him to "communicate directly with Alix's Michigan-based personnel." *See id.* He had "numerous email and telephone communications" with a Michigan-based colleague regarding "candidates and available positions" for the Financial Advisory Services group, and on at least one occasion, Brewington directly recruited candidates for the Michigan office . *See id.* Based on these facts, the court reasoned that "Brewington accepted a job in which his duties were purposefully aimed at, and tied to, Michigan and its residents, Michigan was, at least in part, the focus of Brewington's employment and the parties' relationship." *See id.* at 550.

Undeniably, there are similarities between the circumstances of the defendant in *AlixPartners* and Defendant here. For instance, each attended training in the forum state in furtherance of their employment with the plaintiff, and each executed an employment agreement with a choice-of-law provision dictating application of the law of the forum state. *See id.* at 547–548. More generally, each defendant was employed by a company with strong ties to the forum state, while working from outside the forum state. But unlike the defendant in *AlixPartners,* who applied with a Michigan-based company for a Michigan-focused role, Defendant here did not seek out employment with any Tennessee-based company. Defendant, for example, did not pursue Ncontracts out of his own interest, sifting through several companies and weighing the risks and benefits of working for a Tennessee-based company against other potential employers. He did not use a headhunter or participate in traditional recruiting or interviewing that a job candidate might experience in a traditional application process when applying from the general applicant pool. Instead, his employment with the Tennessee-based plaintiff arose (from Defendant's perspective)

entirely by happenstance, as his former employer (QuestSoft, which Plaintiff has not shown to have been based in Tennessee) was absorbed by a Tennessee-based company (Ncontracts).

Although Defendant made a choice to stay on as an Ncontracts employee after Ncontracts acquired QuestSoft, the fact remains that he became an employee of a forum-based employer (Ncontracts) due solely to an acquisition,[12] which is materially different for present purposes than proactively seeking a position at a forum-based company (as did the defendant in *AlixPartners*). The former situation may reflect an availment of the privilege of acting (or causing a consequence) in the forum, but it is an availment that patently is far less "purposeful" than the latter situation. Thus, the Court concludes that *AlixPartners* is materially distinguishable from the instant case with respect to the "purposeful availment" prong.

Further, unlike the defendant's position in *AlixPartners*, which required regular communications with Michigan employees and who directly contributed to the Michigan office's business, Defendant's position here has not been shown to involve duties aimed at the Tennessee market or team.[13] To the contrary, Plaintiff offers that Defendant's sales territories were "Alaska, California, Hawaii, Nevada, Oregon, and Washington," which the Court views as consistent with

---

[12] As just noted, as far as the record reflects, Questsoft was not Tennessee-based.

[13] The Court notes that Plaintiff's opposition to Defendant's motion states that "Holmberg participated in or assisted with product demonstrations to various customers, and those demonstrations were performed by individuals who were located in Tennessee." (Doc. No. 25 at 8). Plaintiff cites to Doc. No. 8 ¶ 12, (Declaration of Michael Berman) to support this statement. The declaration, however, merely states that "[t]o the extent sales personnel ***request*** product demonstrations with customers or potential customers, the individuals who perform the demonstrations are located in Tennessee…" (Doc. No. 8 at 9) (emphasis added). Therefore, the declaration, in stark contrast to Plaintiff's brief, does not state definitively that such product demonstrations ever took place, let alone that Defendant personally participated in these demonstrations. As noted, the Court in considering a motion to dismiss for lack of personal jurisdiction, can consider Plaintiff's evidence contained in declarations, but will not credit facts contained in briefings not otherwise supported by affidavits or the complaint unless plainly undisputed by the opposing party. The Court therefore will not credit Plaintiff's allegation that Defendant participated in such demonstrations with Tennessee individuals.

his residency on the West Coast. (Doc. No. 1 at 14). The most Plaintiff can offer is that once Defendant returned from his trainings in Tennessee, he continued to participate in remote trainings, "regularly with individuals who were located in Tennessee." (Doc. No. 26 at 1, Second Dec. Michael Berman ¶ 2). Defendant's mere participation in a few remote trainings in which some of the other attendees were in Tennessee, while all of his other business activities were outside of Tennessee, does not evidence the degree of connection to the forum state that the court found sufficient in *AlixPartners*.

While not involving an employer-employee relationship as do the present case and *AlixPartners*,[14] *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) nevertheless is very instructive here. In particular, *Calphalon Corp.* has much to say about the circumstances, like those involved in the present case, in which a defendant's contacts with the forum state were more the result of the plaintiff's choices than of the defendant's purposeful direction of actions at the forum state in particular. In *Calphalon*, the defendant (Rowlette) was the exclusive manufacturer's sales representative for the plaintiff (Calphalon) for the states of Minnesota, Iowa, North Dakota, South Dakota, and Nebraska, which comprised his sales territory. *See id.* at 720, 724. The parties entered into a letter agreement between 1980 and 1996, and in 1996 and 1997, Rowlette executed a one-year manufacturer's representative agreement. *See id.* At the end of 1997, Calphalon notified Rowlette that it did not intend to renew the agreement, and Rowlette sued for breach of contract and unpaid commissions. *See id.* at 720–721. Calphalon then sued Rowlette in the Northern District of Ohio (seeking a declaratory judgment to the effect that, among other things, it had lawfully terminated the agreement), and Rowlette moved to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. *See id.* at 721.

---

[14] *Calphalon* instead involved a manufacturer/sales representative relationship, which actually strikes the Court as not materially different for purpose of the present analysis in any event.

In assessing whether Rowlette purposefully availed itself of the benefits of the laws of Ohio, the court explained that the "performance of the agreement" between Rowlette and Calphalon was focused on Minnesota, Iowa, South Dakota, North Dakota, and Nebraska, but not on "exploiting any market for cookware in the state of Ohio." *See id.* at 723. Further, although Rowlette had email, phone, and fax contact with Calphalon in Ohio and had made two business trips to the state, the court found these contacts with Ohio unpersuasive because they arose "solely" because "Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create continuous and substantial consequences there." *See id.* (internal quotation marks omitted). The court further noted that Rowlette could have served as Calphalon's representative in the designated states "regardless of Calphalon's base of operation." *See id.* This point underscored that Rowlette's contacts with Ohio were not purposeful, but were instead "random, fortuitous, and attenuated," thereby rendering them insufficient for the purposeful availment prong of the personal jurisdiction analysis. *See id.* (internal quotation marks omitted).

Like Rowlette's contacts with Ohio, Defendant's contacts with Tennessee exist because Ncontracts "chose to be headquartered in [Tennessee]" and not because Defendant "sought to further [his] business [here]." *See id.* As discussed, the record reflects that Defendant's sales responsibilities did not involve soliciting or expanding business in Tennessee. Further, it is implicit in the parties' briefs that Defendant attended training in Tennessee merely because Ncontracts happens to be headquartered in the state. The same is presumably true for why the Intellectual Property Agreement contains a Tennessee choice-of-law provision and why Defendant returned the executed Agreement to the Tennessee office. Thus, as in *Calphalon*, many of Defendant's contacts with the forum state arose primarily because of Plaintiff's choices rather than Defendant's purposeful choice to direct his actions at the forum state in particular.

True, just as it was Calphalon's prerogative to be headquartered in Ohio, it is Ncontracts's prerogative to be headquartered in Tennessee. And undoubtedly it is convenient for Ncontracts to host new-employee trainings at its headquarters and to litigate under the laws of its headquarters state. Ncontracts is free to hale its employees from around the country to its Tennessee headquarters for training and have them enter into employment agreements with Tennessee-choice of law provisions. But in so doing, it does not thereby stick its employees with the consequences of "purposeful availment" of the privilege of acting in Tennessee for personal jurisdiction purposes.

Courts facing facts similar to those present in this case have come to a similar conclusion. In *TorcUp, Inc. v. Aztec Bolting Service* ["*ABS*"], 386 F. Supp. 3d 520 (E.D. Pa. 2019), TorcUp sued (*inter alia*) a former employee (Christopher High), in the Eastern District of Pennsylvania for allegedly misappropriating its client list and subsequently working for its direct competitor, ABS. *Id*. at 523. High, whose employment had involved serving as ABS's sales representative based in Houston, Texas, moved to dismiss the case for lack of personal jurisdiction. *See id.* The court found that High had not purposefully availed himself of "of the laws and privileges of" Pennsylvania despite the choice-of-law provision in High's employment contract requiring application of Pennsylvania law and High's four-day training session at TorcUp's headquarters in Pennsylvania. *See id.* at 525, 527 (internal quotation marks omitted). The court explained that even though High would report to his managers in Pennsylvania via email and telephone, "his business activities for [TorcUp] occurred in, and solely concerned, the Houston area." *See id.* Despite High's semi-regular contact with employees in Pennsylvania, the court found that personal jurisdiction was lacking over High based on him residing elsewhere during his employment and the bulk of his business being in Houston. *See id.*

As already mentioned, like the defendant in *TorcUp*, Defendant here also attended training sessions held by his employer in the forum state. But such training alone does not necessarily establish personal jurisdiction in the forum state. *See Chandler v. Roy*, 985 F. Supp. 1205, 1213 (D. Ariz. 1997) (explaining that defendant's attendance of a two-day training seminar did not constitute purposeful availment for personal jurisdiction purposes); *see also TorcUP, Inc.*, 386 F. Supp. at 527 (employee's training sessions at employer's headquarters were "too attenuated of a contact to establish personal jurisdiction"); *cf. Winston v. Leak*, 159 F. Supp. 2d 1012, 1017 (S.D. Ohio 2001) (finding defendant's training in Ohio was insufficient to establish personal jurisdiction in the state because Plaintiff's claims did not arise out of or relate to defendant's participation in the training).[15] And similar to the defendant in *TorcUp*, Defendant here signed an agreement (the Intellectual Property Agreement) with a choice-of-law provision specifying that the forum-state (Tennessee) law governs the agreement. But a choice-of-law provision is not decisive because it is not by itself sufficient to establish jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). Further, like the defendant in *TorcUp*, Defendant's business appeared to primarily revolve around a location far to the west of the forum, with his sales territories reflecting his geographical location. Moreover, Defendant here arguably had even fewer communications with the employees in Tennessee than the *TorcUp* defendant had with his managers in Pennsylvania. Therefore, ultimately the Court cannot find based on the record that Defendant purposefully availed himself of the privilege of acting in Tennessee. Defendant's circumstances are materially different from those of the defendant in *AlixPartners* and the Court is persuaded by the analysis of the court in *TorcUp* and *Calphalon*. Plaintiff did not name a single executive or team member in Tennessee with whom Defendant had regular contact, Plaintiff did not name a single occasion in

---

[15] The Court realizes that *Winston* did not specifically address whether the defendant's training in Ohio was insufficient to establish purposeful availment—the precise issue that the Court is addressing here.

which Defendant traveled to Tennessee other than for training, nor did Plaintiff describe a single responsibility of Defendant in his role that would tether his employment at Ncontracts with Tennessee beyond the mere fact that Ncontracts is a Tennessee-based company.

The Court notes that Plaintiff spills much ink over the fact that Ncontracts' products, services, and software are managed and created in Tennessee. (Doc. No. 25) (citing Second Berman Dec.). While these facts may reveal *Plaintiff's* contacts with the forum, without tying these facts to Defendant's conduct, they have no bearing on the question of personal jurisdiction in this case. For personal jurisdiction to exist in the forum, "[t]he plaintiff cannot be the only link between the defendant and the forum. Rather it is the defendant's conduct that must from the necessary connection with the forum State that is the basis for jurisdiction over him." *See Walden v. Fiore*, 571 U.S. 277, 285 (2014). And while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," Plaintiff's repeated focus on its own contacts with Tennessee without more will not move the needle as to personal jurisdiction over Defendant. *See id.* at 286.

In all, the Court is not satisfied that Plaintiff has met its burden, relatively slight though it may be, in proving personal jurisdiction. Indeed, Defendant's "contacts were precisely the type of random, fortuitous, and attenuated contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *See Calphalon Corp.*, 228 F. 3d at 723. Because Plaintiff has failed to show that Defendant has purposefully availed himself of the privilege of acting in Tennessee, the Court need not address the second prong (whether Plaintiff's claims arise out of or relate to Defendant's contacts with the forum) or the third prong (reasonableness of the exercise of personal jurisdiction). Likewise, the Court need not address Defendant's argument that the Middle District of Tennessee is an improper venue for this action.

TRANSFER OF ACTION

Having found that personal jurisdiction does not exist, the Court next must consider whether transfer of this action, in lieu of dismissal (without prejudice) is proper pursuant to 28 U.S.C. § 1631. The statute provides that a whenever a court finds that there "is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631. "Although Plaintiff[ ] ha[s] not filed a motion to transfer, a court may *sua sponte* cure jurisdictional defects by transferring a suit under § 1631." *See Burrell v. Concept AG, LLC*, 2019 WL 12762540, at *14 (W.D. Tenn. Aug. 23, 2019) (internal quotation marks omitted). While the decision whether to transfer the case "in the interest of justice" is within the discretion of the district court, "[g]enerally, the transfer of a case is favored over dismissal because a transfer facilitates an adjudication on the merits of the dispute at issue." *See id.*

Neither party has indicated its preference (of transfer or dismissal) in the event the Court were to find lack of personal jurisdiction. Given the pending motion for a TRO (Doc. No. 6), and the time-sensitivity associated with such requests for relief,[16] the Court finds that it is in the interests of justice to transfer the case to a court where jurisdiction and venue will be proper.

---

[16] The Court is aware of the lapse of time between the filing of the motion for a TRO and the filing of this memorandum opinion and order, and it understands that this is far from ideal. But the lapse was occasioned by the need for the Court to consider, and ultimately resolve conclusively—and explain thoroughly its view regarding—the crucial challenge to the existence of personal jurisdiction in this Court. The best way for a plaintiff to avoid a delay in the consideration of a motion for TRO pending resolution of a serious challenge to personal jurisdiction is to play it safe by filing in a forum that clearly has personal jurisdiction. That is to say, there can be natural tradeoff for a plaintiff between filing in its preferred jurisdiction and filing in a jurisdiction that is not preferred but which will not foster a colorable personal-jurisdiction challenge. Here, even if one reasonably could disagree with the Court's conclusion that it lacks personal jurisdiction over Defendant, one could not reasonably dispute that Defendant could make a very colorable personal jurisdiction challenge in this Court. Plaintiff made a choice to file in the jurisdiction that it preferred, not the jurisdiction that was safer from a personal-jurisdiction standpoint. That is not say that this was a bad choice, but it is to say that it was a choice that imperiled the promptness of the ruling on the motion for TRO.

The Court's final task is therefore to determine where this action "could have been brought," which is to ask where venue is proper and personal jurisdiction exists. 28 U.S.C. § 1631. The proof of service reflects that Defendant was served in Clovis, California, (Doc. No. 11 at 2), and Plaintiff counsel's declaration avers that Defendant was personally served at his last-known home address. (Doc. No. 12 at 1). Thus, the Court is satisfied that Defendant is a resident of Clovis, California, which reliable open-source information shows to be in Fresno County, which is the Eastern District of California. *See* 28 U.S.C. § 84(b). In a single-defendant case like this one, venue is proper in a "judicial district in which [the] defendant residents," 28 U.S.C. § 84(b)(1), so the Eastern District of California is a venue that is statutorily proper (and also one in which Defendant is subject to personal jurisdiction given that he is a resident of California).

## CONCLUSION

For the reasons stated herein, the Court finds that it lacks personal jurisdiction over Defendant and that transfer rather than dismissal is the appropriate response to this finding. Defendant's Motion (Doc. No. 17) therefore is GRANTED, and the action will be transferred to the United States District Court for the Eastern District of California. The Clerk of this Court is directed to effectuate such transfer and close this file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE